**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHRISTOPHER SWANSON and JEFF
PRINTZ,

              Plaintiffs,

     v.

MARINA MARTINS,

             Defendant.

Civil Action No. 15-1635 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Plaintiffs' motion for default judgment.  Dkt. 10.
In their complaint, Plaintiffs Christopher Swanson and Jeff Printz seek judgment in the amount
of $195,000, plus attorneys' fees and costs, against Defendant Marina Martins for an alleged
breach of contract. Dkt. 1 at 3.  For the reasons explained below, the Court will enter judgment
against Martins in the amount $195,400, but will defer ruling on the Plaintiffs' request for
attorneys' fees pending the submission of further evidence.

## I.  BACKGROUND

On October 29, 2014, Printz and Swanson entered into a contract with Martins for the
sale of real property located at 1375 Maryland Avenue, N.E., Washington, D.C.  20002.  *Id.* at 2;
*see* Dkt. 1-1.  The contract fixed the sale price at $6,500,000, with a three percent "initial earnest
money deposit," ($195,000), which could be forfeited in the case of default by the Defendant.
Dkt. 1 at 2, ¶¶ 8(a), (b), (d).  Martins failed to make the down payment.  *Id.*  On February 5,
2015, the parties agreed to a General Addendum to the contract, which stipulated that if Martins
failed to close on the property by 5:00 p.m. on March 25, 2015, she would to pay three percent

earnest money as a "non-refundable fee." Dkt. 1-2. Martins again failed to uphold her end of the bargain, and Printz and Swanson filed the present action on October 6, 2015.

Martins was served with a copy of the summons and complaint on April 20, 2016. Dkt. 10 at 1; Dkt. 5. She failed to respond within the twenty-one days allowed under Federal Rule of Civil Procedure 12(a)(1)(A), and, as a consequence, the Clerk of the Court entered a default on May 24, 2016. Dkt. 9. The Plaintiffs filed the present Motion for Default Judgment on June 9, 2016. Dkt. 10. Martins has yet to enter an appearance, to answer or respond to the complaint, or to respond to the motion for a default judgment.

Printz and Swanson seek a total of $209,805, which includes $195,000 in contractual liquidated damages, $14,405 in attorneys' fees, and $400 in costs for this action. Dkt. 10 at 2.

## II. ANALYSIS

Obtaining a default judgment requires two steps. At the first step, the plaintiff requests the Clerk of the Court to enter a default. If the Clerk determines that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the [C]lerk *must* enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added). At the second step, the plaintiff must apply for a default judgment, either to the Clerk "for a sum certain or a sum that can be made certain by computation," or to the Court in "all other cases." Fed. R. Civ. P. 55(b)(1), (2). Upon entry of the default, the factual allegations of the complaint are deemed admitted, which usually establishes the defendant's liability. *See*, *e.g.*, *Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014); *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). But, unless the sum at issue is certain, the Court must "make[] an independent determination of the sum to be awarded." *Int'l Painters*, 239 F. Supp. 2d at 57. To

determine damages, the Court may conduct a hearing, *see* Fed. R. Civ. P. 55(b)(2), but need not do so, and may instead rely on "detailed affidavits or documentary evidence," *Ventura v. L.A. Howard Const. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal citation and quotation marks omitted); *see also Robinson*, 4 F. Supp. 3d at 178.  Here, the Plaintiffs have properly obtained a default from the Clerk of the Court.  *See* Dkt. 9.  The only remaining question, accordingly, is the sum to be awarded.

The original contract and the subsequent addendum set out the basis for the Plaintiffs' claim.  The contract set the sales price for the property at $6,500,000, Dkt. 1-1 at 1, ¶ 3, and required a "deposit" of "3% of sales price" with an escrow agent, *id.* at 2, ¶ 4.  The contract further provided that, if the "[p]urchaser fail[ed] to complete [s]ettlement for any reason other than [d]efault by [s]eller, . . .  the [d]eposit may be forfeited as liquidated damages."  *Id.* at 5, ¶ 23.  The "General Addendum," which Martins executed on February 5, 2015, further provided that "[a]ll parties agree that if the buyer is unable to close on this property by 5 PM EST, March 25th, 2015, then the buyer will agree to give her 3% earnest money deposit as a non-refundable fee to be paid directly to the seller."  Dkt. 1-2 at 1.  And, finally, the contract specified that its "interpretation" would be governed by the law of the District of Columbia, where the property was located.  Dkt. 1-1 at 7, ¶ 31.

Under D.C. law, a plaintiff states a claim for breach of contract by alleging "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach."  *Coon v. Wood*, 68 F. Supp. 3d 77, 83 (D.D.C., 2014).  The factual allegations of the Plaintiffs' complaint, which are deemed admitted, satisfy this standard.  They establish that Martins executed both the original contract and the addendum, Dkt. 1 at 2, ¶¶ 7, 10; that she then failed to pay the earnest money deposit, *id.* at 3, ¶ 12; that she

"conducted herself as if the contract was in full force and effect," *id.* at 2, ¶ 9; that she failed to close on the property by the required date, *id.* at 3, ¶¶ 11, 13; and that she failed to pay the non-refundable fee provided for in the addendum, *id.* at 3, ¶ 14.  The determination of damages, moreover, is straightforward.  Martins agreed to pay liquidated damages equal to 3% of the $6,500,000 sales price—or, in other words, $195,000.  That is precisely the amount of damages sought in the complaint, and the Court, accordingly, will award this amount.

In addition to paying damages, Martins is also liable to the Plaintiffs for the expenses that they have incurred in bringing this matter.  The contract provided that, if one party breaches the agreement and the other "retains legal counsel to enforce its rights" under the contract, the non-breaching party "shall be entitled to recover . . . all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement."  Dkt. 1-1 at 5, ¶ 21(A).  "Legal Expenses," in turn, are defined to include "attorney fees, court costs, and litigation expenses."  *Id.* at 7, ¶ 26(J).  The Plaintiffs seek reimbursement for both their costs and attorneys' fees.

With respect to their costs, the Plaintiffs' request is both modest and well-supported. They seek only the $400 filing fee that they paid when the case was commenced.  They have submitted a declaration attesting to the fact that their counsel paid the fee, Dkt. 10-5 at 2, and the docket reflects that the $400 fee was paid.  That expense is manifestly reasonable, and the Court will, accordingly, award this amount as well.

This, then, leaves only the Plaintiffs' claim for attorneys' fees.  Under the contract, they are entitled to collect "reasonable" legal expenses, including attorneys' fees, Dkt. 1-1 at 5, ¶ 21(A), and, according to the Plaintiffs, they have incurred $14,805 in attorneys' fees.  They have supported this claim, moreover, with a declaration of counsel and billing records reflecting the numbers of hours worked by lead counsel and his staff and the hourly rates of the lawyers,

law clerks, and administrative staff who worked on the matter.  *See* Dkt. 10-5 (Valkenet Decl.);

Dkt. 10-6 (invoices for legal services).  The Court has reviewed the redacted invoices attached to

the motion for default judgment, Dkt. 10-6, and concludes that they provide sufficient detail as to

the hours worked and tasks completed and indicate that work was delegated, where possible, to

the more junior attorney or to legal assistants to reduce costs.  The litigation, moreover,

presented significant hurdles in serving Martins.  *See* Dkt. 4.  The Court is thus satisfied that the

Plaintiffs' have justified the number of hours (50.2) expended by attorneys and paralegals in this

case.

Assessment of whether the relevant billing rates are reasonable, however, is more

complicated.  As an initial matter, the Court notes that the billing rates for the Plaintiffs' counsel

and staff are lower than the rates provided in the U.S. Attorney's Office's *Laffey* Matrix for

2015–2016, which is "[t]he most commonly used . . .  schedule of prevailing rates . . . for

lawyers who practice 'complex federal litigation.'"  *Eley v. District of Columbia*, 793 F.3d 97,

100 (D.C. Cir. 2015).  Thomas Valkenet, for example, has been practicing law since 1987 and

charged $400 per hour.  *See* Dkt. 10-5 at 1, ¶¶ 1, 5 (Valkenet Decl.).  In contrast, the *Laffey* rate

for a lawyer with this level of experience—21–30 years'—is $530 per hour.  Dkt. 10-7 (2015–

2016 *Laffey* Matrix).  Likewise, Ian Valkenet has been practicing law since 2012 and charged

$250 per hour.  Dkt. 10-5 at 2, ¶¶ 7,8 (Valkenet Decl.).  And, in contrast, the *Laffey* rate for a

lawyer with this level of experience—4–5 years—is $325 per hour.  Dkt. 10-7 (*Laffey* Matrix).

Law clerks at the firm charged $150 per hour, Dkt. 10-5 at 2, ¶ 9 (Valkenet Decl.), slightly below

the *Laffey* rate for paralegals and law clerks of $154 per hour, Dkt. 10-7 (*Laffey* Matrix).  The

Supreme Court has held that the term "attorney's fees" includes fees for paralegals.  *See, e.g.*,

*Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008).  The Plaintiffs' attorney also attests

that "[t]he fees charged in this case are customary for similar cases handled by this firm."  Dkt.

10-5 at 2, ¶ 12.[1]

An "attorney's usual billing rate is presumptively the reasonable rate, provided that the

rate is in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation."  *Kattan ex rel. Thomas v. District of*

*Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11

(1984)).  The D.C. Circuit, however, has recently held that a district court abused its discretion in

granting an application for attorneys' fees that consisted of the *Laffey* Matrix, the "lawyer's

verified time sheets," and the "lawyer's verified statement that he charged his paying clients the

rates in the . . . *Laffey* Matrix."  *Eley*, 793 F.3d at 102, 104.  "Absent from [the] submission," the

Court of Appeals noted, "[was] evidence that [the] 'requested rates are in line with those

prevailing in the community for *similar services*.'"  *Id.* at 104 (quoting *Covington v. District of*

*Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995)).  As in *Eley*, the submission in this case consists

of the *Laffey* Matrix, the lawyers' invoices to their clients reflecting the hours worked and tasks

completed, and a lawyer's sworn statement attesting to the rates charged.

That is not enough: "a court may not rely by default on a version of the *Laffey* Matrix

without additional evidence from the party seeking attorneys' fees" to determine whether the

rates charged are in line with those prevailing in the community for similar legal services.

*Ventura*, 134 F. Supp. 3d at 105–06.  The Court will therefore defer ruling on the request for

---

[1] Plaintiffs also seek to recover for 2.6 hours of administrative staff time, at a rate of $75 per hour.  *See* Dkt. 10-5 at 2, ¶ 10.  Should the Plaintiffs wish to pursue this portion of their claim, they should provide the Court with authority supporting the reimbursability of administrative staff time as part of an award of attorneys' fees.  *But see, e.g.*, *McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.*, 976 F. Supp. 53, 65–66 (D. Mass. 1997) (declining to award costs for administrative staff time under 42 U.S.C. § 1988(b)).

attorneys' fees and instead allow the Plaintiffs to submit additional evidence demonstrating that

the requested rates are in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation.  "[E]vidence of the

prevailing market rate can take many forms," *Eley*, 793 F.3d at 104 n.5, but courts have found

evidence such as "affidavits reciting the precise fees that attorneys with similar qualifications

have received . . . in comparable cases," *Covington*, 57 F.3d at 1109, and evidence of fee awards

in similar cases, *see Ventura v. L.A. Howard Construction Co.*, 139 F. Supp. 3d 462, 464 (D.D.C.

2015), valuable in assessing fee requests.[2]

## CONCLUSION

Accordingly, it is hereby **ORDERED** that the Plaintiffs' Motion for Entry of Default

Judgement is **GRANTED**.  The Plaintiffs are hereby awarded damages in the amount of

$195,000 and costs in the amount of $400.  The Court will defer resolving the amount of

attorneys' fees due to the Plaintiffs' pending submission of further evidence on the rates

prevailing in the community for similar services by comparable lawyers.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 11, 2017

---

[2] The Court notes that much of the relevant precedent concerns statutory fee-shifting schemes, in contrast to the contractual provision at issue in this case.  *See, e.g.*, *Eley*, 793 F.3d at 99 (fee-shifting under the Individuals with Disabilities Education Act, which provides for "reasonable attorneys' fees," 20 U.S.C. § 1415(i)(3)(B)(i)); *Covington*, 57 F.3d at 1106 (fee shifting under 42 U.S.C. § 1988(b), which provides for "a reasonable attorney's fee as part of costs").  Those cases remain instructive, however, because the relevant statutory language is materially identical to the contractual provision here.